UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM WOODS,

    Plaintiff,                                    Civil Action No.:

v

CITY OF DETROIT,

    Defendant.

---

JAMES B. RASOR (P43476)
Rasor Law Firm, PLLC
Attorney for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax
jbr@rasorlawfirm.com

_____

### **PLAINTIFFS' COMPLAINT & JURY DEMAND**

NOW COMES PLAINTIFF, WILLIAM WOODS, by and through his attorneys, Rasor Law Firm, PLLC, and for his Complaint and Jury and Demand against Defendant CITY OF DETROIT states as follows:

### **GENERAL ALLEGATIONS**

### **Parties**

1. At all relevant times, Plaintiff William Woods was a resident of the City of Detroit, County of Wayne, State of Michigan.

1

2. At all relevant times, Defendant City of Detroit is a Michigan municipal corporation, duly organized and carrying on governmental functions, in City of Detroit, County of Wayne, State of Michigan, and is the body responsible for the control and oversight of its departments, agencies and facilities, including the Detroit Police Department.

3. This lawsuit arises out of events occurring within the City of Detroit, County of Wayne, and State of Michigan.

4. Defendant's disability discrimination in violation of the ADA involves common questions of law and fact pursuant to Fed. R. Civ. P. 20(a)(1)(B).

## Jurisdiction and Venue

5. This cause of action involves violations of Plaintiff's civil rights, as secured by the United States Constitutions, and is brought pursuant to the Americans with Disabilities Act.

6. This Court has jurisdiction over the claims arising under federal law pursuant to 28 USC §§ 1331, 1343.

7. The amount in controversy exceeds $75,000.00 exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

8. Venue is appropriate in this Court pursuant to 28 USC §1391(b), as this cause of action arises out of occurrences that took place within this District, in the County of Wayne, and Defendant transacts and conducts business within this District.

9. Plaintiff timely filed charges with the EEOC regarding these ADA violations and received a right to sue letter as following: Plaintiff's right to sue for charge number 471-2019-01776 was received on January 17, 2023.

10. Plaintiff has exhausted all necessary administrative requirements to pursue these ADA claims. Indeed, the EEOC found reasonable cause to believe that Plaintiff's rights under the ADA were violated.

## COMMON FACTUAL ALLEGATIONS

11. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs one through 10 of the General Allegations, as if fully set forth herein, paragraph by paragraph, word for word.

12. Beginning on or around the time of Detroit's bankruptcy in 2014, Detroit Mayor Michael Duggan set out to cut costs in any way the City could find.

13. In light of this overarching decision by Duggan, he enlisted (former) DPD Police Chief James Craig to likewise find ways to cut costs in his department; the DPD maintains one of the largest budgets within the City of Detroit.

14. Craig determined that it would be cheaper to forcibly retire officers who had been deemed "permanently disabled," despite whether they could perform the functions of either a police officer or of the assignment they were performing at that time.

15. In lieu of Duggan's instruction, (former) Chief Craig issued a mandate that the DPD should hire as many full duty officers as possible.

16. Implicit in this "mandate" was that the DPD would forcibly retire as many disabled officers as possible under the guise of the Collective Bargaining Agreement.

17. Based on this mandate from James Craig and language in the CBA, the DPD began forcibly retiring disabled officers.

18. Specifically, the City relied on Section 34(E) of the parties CBA, which states that, "[n]othing in this Article shall affect the right of the Department under the Charter of the City of Detroit to refer employees for duty or non-duty disability pensions."

19. Plaintiff was forced into retirement as a result of this scheme to remove disabled officers from the DPD force.

20. Before determining to retire or terminate various disabled officers, including but not limited to Plaintiff, Defendant undertook no decision-making as to these known disabled officers' jobs, the officers' specific disabilities, or ability to perform functions of their positions or the extent of their perceived inability to perform certain essential functions.

21. The crux of Defendant's decision here arose out of either a discriminatory animus or a patent misunderstanding of the ADA: i.e. the City of Detroit does not have to accommodate any individual who suffered a "permanent disability."

22. Despite Defendant's discriminatory conduct, there are still unaccounted-for permanently disabled officers working for the DPD.

23. Further, the DPD does not require non-disabled officers to pass a 24-function test for a police officer, even though Defendant employs numerous, non-disabled officers who cannot perform all 24 functions that Defendant requires disabled officers to do in order to avoid forced retirement or termination.

24. Likewise, Chief Craig admitted that this ultimate decision to forcibly retire these individuals arose out of his desire to eliminate restricted duty positions (and the disabled officers) and replace those disabled officers with allegedly cheaper civilians.

25. Chief Craig has admitted that although his purported basis for forcibly retiring these disabled officers was because it is less expensive, there was no financial reason the DPD could not have maintained the disabled officers and hire new officers.

26. The civilians that Defendant replaced the disabled officers with were less qualified than the retired officers/employees, and upon information and belief, appeared to be cheaper for Defendant to employ.

27. Likewise, the civilians that Defendant replaced the disabled officers with could not perform any functions of the retired/terminated individuals as they were not sworn police officers.

28. Every officer who was on restricted duty and/or deemed "permanently disabled," including Plaintiff, had been put there as a reasonable accommodation for a disability and/or needed an accommodation.

29. Defendant's decision to retire or terminate individuals who had requested the reasonable accommodation of restricted duty and/or continued employment only to hire non-disabled, purportedly less expensive civilians to replace them is a violation of the ADA.

30. Plaintiff Woods had been a longtime employee of the Detroit Police Department.

31. Following an on-duty accident that seriously injured Plaintiff's back, neck, and brain, Defendant placed him on restricted duty in 2000.

32. Plaintiff's injuries impacted the substantial major life activities of performing manual tasks, walking, standing, lifting, bending, and working.

33. Plaintiff returned to full duty status as a police officer in approximately 2001.

34. In 2015, Plaintiff was transferred to a different precinct and shift, which negatively impacted his mental health.

35. After this transfer, Plaintiff began patrol operation in full uniform and duty gear.

36. In the Spring of 2015, Plaintiff began to experience severe back, hip, and leg pain as a result of his uniform/duty gear, including his gun belt, and due to the squad car's seat.

37. As a result, in 2016, Plaintiff submitted "Employer's Basic Report of Injury" forms complaining of the pain he was experiencing due to his duty gear and squad car seat.

38. Plaintiff was placed on light duty in 2016, and his disability restrictions included: not carrying his gun belt, and being in a location in which he could sit, stand, and walk with regularity.

39. Plaintiff was assigned to a Communications position as part of his accommodation, which sufficiently accommodated his disabilities.

40. Plaintiff was qualified for the Communications position, and he did in fact work full time in said position successfully from 2016 until his involuntary placement on retirement.

41. After being recommended for a forced retirement based on his disabilities, Plaintiff was forcibly retired on or around April 30, 2018.

42. Plaintiff's mental health was severely impacted by Defendant's sudden choice to cease accommodations, resulting in depression, anxiety, PTSD, and sleeplessness.

43. Defendant ultimately replaced Plaintiff with a civilian, who could not perform any of the police functions that Plaintiff could.

44. Likewise, Plaintiff was not offered to work in this position as a civilian.

45. At no point did Defendant receive any notice that permitted a finding that he could not perform his assignment in the Communications unit; in other words,

Plaintiff could perform the position with or without a reasonable accommodation.

46. In April of 2018, Plaintiff was still otherwise able and qualified to be employed by the Detroit Police Department with or without reasonable accommodations.

47. Despite that Plaintiff had performed his job in the Communications unit admirably and without issue for years, he was forcibly retired.

## COUNT I
## VIOLATION OF 42 U.S.C § 12101, *et seq.*, OF THE AMERICANS WITH DISABILITIES ACT—DISCRIMINATION AND/OR FAILURE TO ACCOMMODATE
## AS TO DEFENDANT CITY OF DETROIT

48. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 47, as if fully set forth herein.

49. Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112, prohibits discrimination against any qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

50. 42 U.S.C. § 12111(8) defines qualified individual to mean an individual who with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires.

51. At all relevant times, Plaintiff, based on their above-referenced disabilities, is a qualified individual within the meaning of 42 U.S.C. § 12111(8).

52. Plaintiff could perform the jobs duties of the restricted-duty job he held prior to his involuntary retirement.

53. Plaintiff Woods was accommodated for a period of time, only to have his accommodation refused for a period of months, to the extent that this failure to accommodate without reason caused his further injuries.

54. 42 U.S.C. § 12112(b) defines discrimination against a qualified individual on the basis of disability. The definition of discrimination includes the failure to reasonably accommodate a disabled individual. It includes the following:

    a. 42 U.S.C. § 12112(b)(3) includes in the definition of discrimination utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability.

    b. 42 U.S.C. § 12112(b)(5) includes in the definition of discrimination the failure to reasonably accommodate a qualified individual with a disability.

    c. 42 U.S.C. § 12112(b)(6) includes in the definition of discrimination the use of qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with a disability unless it is shown to be job related for the position in question and consistent with business necessity.

55. A reasonable accommodation under the ADA includes "job restructuring…reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of

examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations[.]" 42 U.S.C. § 12111(9).

56. Likewise, an employer under the ADA has a duty to consider transferring a disabled employee who can no longer perform his/her old job even with accommodation to a new position within the company for which that employee is otherwise qualified.

57. The ADA also requires an individualized inquiry into each individual employee's specific situation and need for an accommodation and accommodating such a request unless the request poses an undue hardship.

58. To determine the reasonableness of an accommodation, the ADA's regulations dictate that "it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

59. The purpose of this interactive process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."

60. Defendant violated the ADA when it discriminated against Plaintiff based on his disability and request for accommodation by failing to accommodate Plaintiff.

61. Defendant's failure to accommodate Plaintiff Woods amounted to him being forced off duty.

62. Defendant's failure to accommodate Plaintiff Woods amounted to him suffering further injuries and exacerbated injuries that he sought an accommodation for; indeed, an accommodation was available given Defendant had accommodated him for a long period before April of 2018.

63. Defendant discriminated against Plaintiff by enforcing its facially discriminatory policies regarding disabled employees and taking adverse employment actions against Plaintiff lacking either a sufficient reason or engaging in any interactive process.

64. By ignoring ongoing discrimination and enforcing discriminatory policies against Plaintiffs, Defendant disregarded Plaintiff's basic rights under the Americans with Disabilities Act.

65. Defendant's actions and policies in discriminating against Plaintiff based on his disability and failing to accommodate Plaintiff were conducted with malice or reckless indifference to Plaintiff's federally protected rights.

66. Given Defendant's general treatment of Plaintiff's need for accommodation(s), Plaintiff has direct evidence of discrimination.

67. Instead of considering accommodating Plaintiff by engaging in an interactive process to determine what job(s) Plaintiff could perform, Defendant forced Plaintiff into retirement.

68. As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

69. Pursuant to the ADA, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff William Woods respectfully request that this Honorable Court enter judgment in his favor and against Defendant, for compensatory damages in whatever amount they are found to be entitled, exemplary damages commensurate with the wrong and Defendant's ability to pay, punitive damages, and an award of their fair and reasonable attorney fees, cost of litigation, and interest.

**COUNT II**
**VIOLATION OF 42 USC § 12101, *et seq.* - THE AMERICANS WITH DISABILITIES ACT – RETALIATION**

70. Plaintiff reasserts and realleges each and every allegation contained in paragraphs 1 through 69 of this Complaint, as if fully set forth herein, paragraph by paragraph, word for word.

71. The ADA, pursuant to 42 USC §12203, prohibits retaliation against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

72. Defendant owed Plaintiff a duty not to retaliate against him with respect to employment, promotional opportunities, compensation, post-termination rights or other conditions or privileges of employment on the basis of his protected activities.

73. Plaintiff engaged in protected activity when he requested an accommodation with Defendant.

74. Defendant had knowledge of Plaintiff's protected activities as set forth in the preceding paragraphs.

75. Had Plaintiff not sought his request for an accommodation, he would not have been subjected to adverse treatment from Defendant.

76. Defendant's actions in retaliating against Plaintiff based on his protected activity were conducted with malice or reckless indifference to Plaintiff's federally protected rights.

77. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

78. Plaintiff was terminated shortly after he engaged in the above-referenced protected activities.

79. Defendant, by and through its agents, servants, and/or employees, subsequently took adverse, retaliatory actions against Plaintiff including, but not limited to, denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees of Defendant along with forcing him into retirement prematurely.

80. Defendant and its agents, servants and/or employees' actions were intentional with reckless indifference to Plaintiff's rights and sensibilities.

81. As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: wage losses, potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

82. Pursuant to the ADA, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to

punish or deter Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff William Woods respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, including but not limited to compensatory damages in whatever amount he is found to be entitled, exemplary damages commensurate with the wrong and Defendant's ability to pay, and an award of his fair and reasonable attorney fees, cost of litigation, and interest.

Respectfully Submitted,

RASOR LAW FIRM, PLLC

/s/ *James B. Rasor*
James B. Rasor (P43476)
Attorney for Plaintiff
201 E. 4th Street
Royal Oak, MI 48067

Dated: March 10, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM WOODS,

    Plaintiff,                                     Civil Action No.:

v

CITY OF DETROIT,

    Defendant.

___

JAMES B. RASOR  (P43476)
Rasor Law Firm, PLLC
Attorney for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax
jbr@rasorlawfirm.com
_____

## DEMAND FOR JURY TRIAL

**NOW COMES** Plaintiff, by and through his attorneys, RASOR LAW FIRM, PLLC and hereby requests trial by jury in the above-captioned matter.

                                      Respectfully Submitted,

                                      RASOR LAW FIRM, PLLC

                                      */s/ James B. Rasor*
                                      James B. Rasor (P43476)
                                      Attorney for Plaintiff
                                      201 E. 4th Street
Dated: March 10, 2023              Royal Oak, MI 48067